DUNN & BAKER, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.'

Docket Nos. 65056, 68687.   Promulgated May 8, 1934.

*Wilson S. Wiley, Esq.*, and *J. Q. D'Albini, Esq.*, for the petitioner.
*Willis R. Lansford, Esq.*, for the respondent.

OPINION.

ARUNDELL: Petitioner claims deductions for the depletion of its basalt rock deposit on the basis of discovery value. Section 23 (1) of the Revenue Act of 1928 provides for a reasonable allowance for depletion of " mines, oil and gas wells, other natural deposits, and timber." Section 114 prescribes the basis for depletion allowances. The general rule under that section as to property acquired by purchase is that the basis is cost of the property. Two exceptions are made, one of which relates to oil and gas wells and the other, contained in section 114 (b) (2),[1] relates to mines and allows depletion based on discovery value. Petitioner seeks to bring its case under the latter provisions.

Much of thé argument is devoted to urging that basalt rock is a mineral and the deposit from which it was removed is a mine, apparently in an effort to distinguish the case from that of *Parker Gravel Co.*, 21 B.T.A. 51. In that case we went at length into some of the definitions of mines and minerals, concluding that Congress intended the word " mines " in the statute to be given a restricted meaning as relating to the extraction of minerals, as distinguished from other natural resources, and that gravel is not a mineral as that term is generally understood. We said in part:

It is apparent, we think, that Congress no more intended the word "mines" as used in this statute to include "other natural deposits" than it was intended to include oil and gas wells or timber. We can not assume that Congress was engaged in idle expression when it employed the words "oil and gas wells" and "other natural deposits" in association with the word "mines" and in order to give meaning to all of the words used, it is obvious that the word "mines" must be read in its restricted sense as including only what is generally included under the word "minerals."

If it be held that the word "mines" is here used in its broad sense to embrace a gravel pit, it must be held that gravel in the same sense is a "mineral." We would then be unable to attach any significance to the words "other

---

[1] (2) DISCOVERY VALUE IN CASE OF MINES.—In the case of mines discovered by the taxpayer after February 28, 1913, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter, if such mines were not acquired as the result of purchase of a proven tract or lease, and if the fair market value of the property is materially disproportionate to the cost. * * *

natural deposits" used in the statute, since any natural deposit is within the broad meaning of the word a "mineral" and an excavation to recover such mineral is a "mine." Water in the broad sense of the word, is a mineral, and a well in that sense might then be called a "mine", but certainly the word "mine" is not generally so understood. If such a construction be given to the statute, not only would the words "other natural deposits" have no meaning or effect, but a direct conflict in terms would result, for the reason that there could be no natural deposits other than mines.

If Congress had intended such meaning, the statute could easily have been framed to read: "mines, including oil and gas wells, and other natural deposits", but we can not supply what has been thus omitted. It is our conclusion, therefore, that a gravel pit or deposit is not embraced within the term "mines" as used in the sections of the Revenue Act of 1926, above quoted. * * *

The same reasoning is applicable here. As generally understood a surface working for the extraction of stone is a quarry and not a mine. While a mine is sometimes broadly defined to include any excavation for minerals, it is more strictly used to denote subterranean workings as distinguished from quarries, placers, and surface or open works. Minerals and mineral lands have sometimes been construed to include various kinds of stone deposits, but in mining parlance mineral means ore, and mineral deposit means a valuable mass of ore. For definitions see "A Glossary of the Mining and Mineral Industry" by Albert H. Fay, Bulletin 95, Department of Interior. These distinctions obtain as well outside the mining industry and the popular concept of a mine does not include a rock quarry. "The legislature must be presumed to use words in their known and ordinary signification." *Levy's Lessee* v. *M'Cartee*, 6 Pet. 103, quoted in *Old Colony R.R. Co.* v. *Commissioner*, 284 U.S. 552, 560. As pointed out in the *Parker Gravel Co.* case, had Congress intended that the word "mines" was to be given the broad construction contended for the statute could easily have been so framed. Undoubtedly, petitioner's deposit of stone is a natural deposit which Congress specifically directs shall be subject to depletion allowances, but which it carefully refrained from including in the discovery provisions of the statute. We are of the opinion that the term "mines" as used in the statute was not intended to include rock quarries; consequently, petitioner is not entitled to depletion deductions on the basis of discovery value.

There is an additional reason which compels the denial of petitioner's claim. Where the discovery provisions of the statute are applicable the basis is "the fair market value of the property at the date of discovery or within 30 days thereafter." Thus it is vital to a claim for discovery depletion that fair market value be established. Petitioner claims a fair market value of $50,000 based on the originally estimated content of 200,000 cubic yards at 25 cents

per yard. That price we assume is taken because in prior years the owner of a quarry about a half mile distant from petitioner's received a royalty in that amount for each cubic yard of stone removed. That price would not necessarily be controlling in petitioner's case. The evidence is that petitioner used part of its quarried rock in its own construction projects and sold some to outsiders, but the sale price is not given. There is also testimony that, by charging itself with the same prices at which rock was sold to others, petitioner's operation of the quarry showed a profit, before depletion, of some $56,000 during a 4-year period when something like 80,000 cubic yards of stone were quarried. If this has anything to do with the case, it serves to show the lack of any standard of valuation in the evidence. Moreover, there is evidence that petitioner purchased quarried rock at a price as low as 3 cents per cubic yard, and paid as high as $1.75 per yard. Another purchaser paid as high as $6 per yard at the quarry near petitioner. From these varying figures it is impossible to say what price petitioner could command for its rock. But even assuming a determinable content and a fixed price, the multiplication of the two figures does not give fair market value. *Reinecke* v. *Spalding*, 280 U.S. 227.

The petitioner has the burden of establishing as of the discovery date, or within 30 days thereafter, the fair market value of the property with respect to which depletion is claimed. That is, the value of the entire property " in money as between one who wishes to purchase and one who wishes to sell; the price at which a seller willing to sell at a fair price and a buyer willing to buy at a fair price will trade, both having reasonable knowledge of the facts." *Tex-Penn Oil Co.*, 28 B.T.A. 917, 967, quoting *Phillips* v. *United States*, 12 Fed. (2d) 598. The burden is not met by a mere showing of the present selling price of units of the property, particularly where, as here, the property is of a kind that will be disposed of over a period of years during which it will naturally be affected by such undeterminable factors as changes in demand and variations in production costs.

Petitioner has not established the fair market value of its rock deposit at the basic date, and for this additional reason its claim for discovery depletion must be denied.

*Decision will be entered under Rule 50.*